## BENJAMIN F. HALLETT vs. JOSIAH OAKES.

Where one, who is restrained of his liberty against his will, and without legal process, as an insane person, employs counsel to prosecute a writ of *habeas corpus*, on his behalf, for the purpose of investigating the grounds and circumstances of the restraint, the counsel so employed will be entitled to recover a reasonable compensation for his services, provided they be rendered in good faith, and upon due inquiry into the causes of the confinement, and the condition of the party be such, that an investigation before a judicial tribunal is proper.

THIS action was brought to recover for professional services, rendered by the plaintiff, as an attorney and counsellor at law, for the defendant, between July, 1842, and January 16, 1845, and was tried before *Wells*, C. J., in the court of common pleas.

It was admitted, on the part of the defendant, that the services were performed, and that the charges therefor were reasonable. The defendant, by his guardian, paid into court, under the rule, the amount of the charges for services rendered previous to January, 1845.

In regard to the services, which were the subject of the charges between the 1st and 16th of January, 1845, it appeared, that the defendant was then confined as a patient in the M'Lean Asylum for the insane, not under any process of law, but upon such evidence as the regulations of that institution required; that the plaintiff, at the request of the defendant, rendered the services in question, in prosecuting a writ of *habeas corpus* in this court, in order to relieve the defendant from his restraint; and that upon the hearing the defendant was remanded to the asylum as an insane person.

It also appeared, that, on the 5th of December, 1844, an application was made to the judge of probate for the county of Middlesex, to appoint a guardian for the defendant, as an insane person; that notice was duly given of the same to the defendant, and of the time and place for the hearing thereon; that, on the 16th of December, the defendant was taken and conveyed to the asylum, and there received, the usual forms for the admission of patients having been previously observed and complied with; and that after the decision of this court upon the *habeas corpus*, namely, the 19th of January, 1845, Amory Hooton was duly appointed guardian of the defendant, as an insane person. The guardian appeared and took upon himself the defence of this action. There was evidence on both sides, as to the sanity and capacity of the defendant, at the time the services in question were rendered.

The plaintiff contended, that even if the defendant were insane, yet, as he was restrained of his liberty without legal process, he was entitled to a legal investigation of the cause of the restraint, and to the aid of counsel in such investigation, and that until he had been placed under guardianship as an insane person, he would be liable for all reasonable and beneficial services, which might be rendered for him, suitable to his condition and circumstances.

The court instructed the jury, that (assuming the defendant to be restrained of his liberty against his will, and without any legal process) if they should be satisfied, upon the evidence, that he was insane, at the time of the contract; or that his

condition was such, that it was proper that the question of his insanity, and the propriety of his confinement, should be investigated before some legal tribunal; and that the plaintiff, at the request of the defendant, and acting in good faith, and upon due inquiry into the grounds and causes of his confinement, instituted and prosecuted the proper legal proceedings for a judicial inquiry into the grounds of the restraint imposed upon the defendant, the plaintiff would be entitled to recover a reasonable compensation for his services; and that such services might be regarded in the light of necessaries, for which the defendant would be liable, upon the same principle that minors are liable for necessaries.

The jury found a verdict for the plaintiff; and, in reply to a question by the court, stated that being unable to agree on the question of the defendant's insanity, they gave their verdict for the plaintiff on the other ground submitted to them.

The defendant, by his guardian, filed exceptions to the instructions.

*E. Buttrick*, for the defendant.

*B. F. Hallett*, for himself.

SHAW, C. J. The jury not having agreed upon the fact, whether the defendant was or was not insane, at the time the services were rendered by the plaintiff, the question arises upon the other branch of the instructions, which relates to the defendant's liability as upon an implied contract for necessaries.

The court are of opinion, that the direction was correct. It proceeds on the ground, that the contract of a person of unsound mind is voidable but not void (*Allis* v. *Billings*, 6 Met. 415); and, then, whether void or not, in any particular case, must depend on the circumstances.

Mental capacity is undoubtedly necessary to the validity of an express contract, which derives its force from the mutual agreement of the parties. But a party may be liable on an implied liability for supplies and services, which are reasonable and proper, and suitable to the state and condition of such party, though at the time he is not of sound mind. The contracts of such persons are placed in many respects on the

same footing with those of infants. *Seaver* v. *Phelps*, 11 Pick. 304; *Baxter* v. *Earl of Portsmouth*, 5 B. & C. 170; *S. C.* 7 D. & R. 614, and 2 C. & P. 178.

In the case of a person wounded, or fallen in an apoplexy, we suppose, that if medical relief, suitable and necessary to his condition, is called by others before he becomes conscious, he will be liable, on a *quantum meruit*, for such professional services.

If, during a person's last sickness, accompanied with delirium and insanity, from which he never recovers, he should be attended by physicians and nurses called in by friends, or be supplied with medicines and other necessaries suitable to his condition, at the instance of his family or other attendants, we suppose that such services and supplies would constitute a good legal claim, which, by statute, is made a preferred one, on his estate.

Cases may be supposed, in which legal professional services may be as necessary to a person in such an unhappy condition, as medical, and yet no one may have express authority to procure them. We think that services of this description would stand upon the ground of food, fuel, and other necessary supplies, where, from the duty of making a reasonable compensation, the law implies a promise. Of course, if such supplies or services are not necessary, if any imposition be practised, or advantage taken, either by the person making the claim, or by any one in privity or in concert with him, no such duty arises, and no such promise is implied. That is always a question for the jury, if contested.

In the present case, we think the rule of law was correctly stated, and with proper qualifications. We must not be governed by the consideration, that the defendant was subsequently adjudged to be insane; at the time the plaintiff was retained, the defendant was restrained of his liberty, without warrant of law, that is to say, without legal process; and there was ample room for supposing, that he was not insane, and, of course, was unlawfully restrained of his liberty. If such was the fact, nothing could be more necessary to the

well being of the defendant than to obtain his liberty, and, for that purpose, to put in motion the proper proceedings for bringing his right to a judicial determination.

*Exceptions overruled.*